No. 11,123.

. Interdiction of Julius Godolphin Leech.

1. The knowledge of the attorney applied in the suit; his responsibility and labor are *criteria* of value in fixing his fee.

A fee for services rendered, under the eye of the court, will not be reduced unless manifestly excessive.

2. As much of the income of the estate of an interdicted person as may be needed to mitigate his sufferings and care for his person must be expended, and sufficient of whatever remains of the income applied to the support and comfort of his wife and children.

3. The wife without means is entitled to an amount for her support and the support of her children from the income of the estate, without the intervention of a family meeting.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Buck, Dinkelspiel & Hart* for the Curator, Appellant.

*Wm. Armstrong contra.*

The opinion of the court was delivered by

BREAUX, J. Mrs. Annie Candia Leech was plaintiff in a suit to interdict her husband, Jules Godolphin Leech, who is insane.

They were married in April, 1881.

Two children, minors, are issues of the marriage.

The plaintiff and her children, and a young daughter of her husband, issue of a previous marriage, were without funds and without the necessaries of life.

The interdict owns property, which brings a revenue.

In answer to plaintiff's petition for his interdiction, the defendant having been personally cited, filed the plea of general denial.

Experts were appointed and examined as witnesses; other testimony was heard.

The defendant was interdicted by a judgment of the District Court, signed on the 30th day of May, 1892.

A family meeting was convened, and on its recommendation the brother of the defendant, John W. T. Leech, was appointed as curator of the interdict. The record does not disclose that any appeal has been taken from the judgment interdicting the defendant.

After the curator had qualified, the appraisers who appraised the property for the inventory of the interdict's estate, claimed each $20.

The medical experts appointed by the court claimed $50 each.

The attorney for services in matter of the interdiction claimed $400.

The stenographer for reporting the testimony claimed $4.50.

The notary, for the inventory, claimed $100; and each of these creditors filed a rule against the curator to compel him to pay his claim.

Mrs. Annie C. Leech, the interdict's wife, also sued, by rule, for $60 a month, beginning March 1, 1892, and to continue until the further order of the court.

A plea of no cause of action was filed, against the claim of the attorney and that of Mrs. Leech, the wife, and against the latter the defendant further pleaded that the rule is premature, and that she collected money for which she should account. The exceptions were referred to the merits by the court, and the rules were tried on the merits.

It was proven on the trial of the rule that the real estate of the interdict is appraised at $15,869; that it is rented at $165 a month.

That the tenants are not all prompt in paying rent, but that not less than $125 a month can at present be collected, if not the whole amount.

That the cost of maintaining the interdict is $30 a month.

Testimony was heard as to the amount claimed by the wife; also as to claims made in the other rules filed. The judgment of the District Court made the rule of Mrs. Leech absolute in so far as to order the curator to pay for the support of herself and children sixty dollar, in cash a month, out of the revenues of the estate, for the months of June, July, August and September, 1892. And she was given authority to expend from the revenues of her husband's estate for the support of the minor child of the first marriage not less than eighteen dollars a month, and not more than twenty-three dollars, and for the interdict not less than thirty dollars and not more than thirty-five dollars a month, without further authority from the court.

The appraisers, the medical experts, the attorney and the stenographer were allowed their claims; that of the notary was reduced to fifty dollars.

From the judgment fixing these amounts on rules, the curator appeals.

The records do not disclose error on the part of the district judge in fixing the amounts to be paid to the experts, the stenographer and the appraisers.

He had the opportunity from personal observation to judge of the value of the services. The services of the experts were highly important and indispensable.

The person afflicted was examined at different times and his condition was proven by their testimony.

The facts do not disclose that we should stamp the account of the officers of the court as overcharges. We would not hastily conclude that an overcharge was intended, for they above all should keep within the limits of the fee bill when an unfortunate interdict is concerned.

The services rendered by the attorney to the interdict are chargeable to his estate.

In the cases of Breaux, Fenner & Hall vs. Franke, 40 An. 336, this court held that the fees due the lawyer for successfully defending a wife in a suit for her interdiction brought by her husband is due by the community.

For similar reason the community primarily is responsible for the fees of attorney who prosecutes a suit and obtains a judgment of interdiction.

If there is no community the estate of the lunatic is liable. C. C. 2403.

This proposition is not disputed by the curator.

He limits his objection to the amount claimed and contends that the fee should be considerably less.

It is conceded in the brief that the services rendered by the attorney to the interdict were simply those in the interdiction proceedings proper, " and for that he is of course entitled to a moderate fee."

The fee is not unreasonable in amount.

The litigation has been brought to a close at costs comparatively economical.

The record discovers a satisfactory condition of the estate. The character of the services and rights involved, we think, justify the amounts allowed.

The legal services rendered to the wife and children, necessarily incidental to the suit, and for which it does not appear that any charge is made, present no grounds for reducing the fee to the amount suggested by the defendant. It is not proven that these services are included in or form part of the attorney's claim for services rendered by him to the interdict's estate.

SUPPORT OF THE INTERDICTS' WIFE AND OF HIS CHILDREN.

The wife without means is entitled to an amount for her support and that of her children from the resources of the estate of her husband, an interdicted person, without the recommendation of a family meeting.

The husband owes a support to his wife and children.

She has the right to contract debt for her maintenance and that of her children, to enforce the payment of which the creditors have a right of action.

It follows that she must have the right to obtain directly the support which she can secure by incurring debts for the purpose.

In interpreting Article 212 of the Code Napoleon (similar to Art. 116 of our Code), the French courts have clearly sustained the right of the wife and her children to recover a support for herself and her children under circumstances similar to those in the case at bar.

"*De même, la femme d'un interdit peut demander une pension alimentaires au tuteur, encore bien que la nomination de ce dernier soit contestée, et sans qu'il y ait lieu a surseoir sur la demande d'aliments jusqu'après la décision de la dite contestation.* Aix, 5 Mars, 1842, Journal du Palais, p. 189.

"*Et d'autres part un frère peut agir en son nom contre la femme de son frère pour obtenir des aliments à ce dernier séparé de biens et en état d'aliénation mentale.*" Fuzier-Hermann, Codes Annuités, Vol. 1, p. 291, Nos. 17 and 18.

Under the Code Napoleon a tutor is appointed to the interdict, and not a curator.

We understand the jurisprudence under the common law to be equally as clear and emphatic.

" The court of chancery had the power to direct an allowance out of the income of the estate of the lunatic " " for the support " " of the members of his family who had a legal claim upon him for support." Page's Chancery Reports (N. Y.), Vol. II, p. 257.

" It was the duty of the court of common pleas to appropriate * * * so much of the income of the estate of the lunatic as might be sufficient, not only for his support, but that of his family." Hambleton's Appeal, 102 Penn., 153; May vs. May, 103 Mass. p. 256.

### In Reference to a Family Meeting.

The defendant, in the next proposition in the order of his defence, states that no amount should be fixed without the intervention of a family meeting.

The rules and laws governing when minors are concerned are invoked as applying to the person and property of the interdict.

We are not inclined to deny the correctness of the proposition.

It would be conclusive if the amount were appropriated from the separate estate of the interdict.

It is allowed in the case at bar exclusively from the revenues. No part of the capital, or separate estate proper, can be applied to the purpose without first submitting the matter to a family meeting.

No family meeting need be held to recommend to the court that an amount from the revenues of the minor should be expended for his support and education. The law is not more exacting in so far as relates to the interdict.

The wife and children should be allowed reasonable expenditures for their support from the revenues.

A number of witnesses have testified that $60 a month for the support of the mother and that of her children and for the schooling of the latter is not at all extravagant.

Provisions made for the support of the daughter of the first marriage are equally as reasonable, also those made for the interdict.

Interdicts are the wards of the court.

The judge should be informed at least once in three months of the state of the health of the person interdicted and of the manner in which he is treated. C. C. 424.

" It is the duty of the judge to visit the person interdicted whenever from the information he receives he shall deem it expedient." C. C. 425.

Under the authority of the judge, sufficient of his income must be expended as will possibly mitigate his sufferings and needful to the care of his person.

In reference to the remainder of the income, if in time it becomes evident that the amount allowed to the wife and children is more than the revenues justify, it must be reduced to an amount absolutely within the income.

The law having specially entrusted the District Court with a duty

regarding persons interdicted, we will not disturb the judgment ordering the payment of amounts for the support of the person interdicted and his family and the education of his children, unless it is manifest that there is error. The records of this case do not disclose any error.

After her husband had become insane, prior, however, to the judgment interdicting him, the wife had received about $350, which she has expended in ministering to his care and in her support and that of her children. The receipt of this amount and its expenditure give no ground for requiring an accounting before allowing her an amount for support of herself and children.

Judgment affirmed at appellant's costs.