## BAIRD v. MILLS et al.
### No. 8670.

Court of Civil Appeals of Texas. Austin.
July 13, 1938.
Rehearing Denied Sept. 21, 1938.

Parker V. Lucas, of Dallas, and W. A. Morrison, of Cameron, for appellant.

Wallace & Wallace, of Cameron, and Malone, Lipscomb, White & Seay, of Dallas, for appellees.

BAUGH, Justice.

This suit was filed by appellant, widow of a deceased World War veteran, against the mother, brothers and sister of said veteran, to set aside an instrument signed

by appellant, referred to as a "settlement agreement" or "family settlement," (a) on the grounds that it was procured through fraud, deceit, and overreaching; and (b) because of want of consideration. The case was tried to a jury. At the close of the evidence both plaintiff and defendants filed motions requesting the court to withdraw the case from the jury and render judgment in their respective favor. The motion of the plaintiff was denied, that of the defendants granted, the jury discharged, and judgment rendered that plaintiff take nothing; hence this appeal upon an affidavit of inability to pay costs.

In 1921, Wilford McKay Mills held a War Risk Insurance policy for $10,000, in which his father, W. H. Mills, was named beneficiary. Wilford married appellant in 1920, and lived with her as his wife continuously until he died intestate on March 31, 1921. He had made no change in the beneficiary. Upon his death his father applied to the Bureau of War Risk Insurance for payment of said policy. Award was made to him, under its terms and the provisions of the Acts of Congress, in the sum of $57.50 per month, which he continued to collect monthly for a period of 9 years, when the father died intestate on March 31, 1930. Upon his death, the commuted value of the remainder of the 240 monthly payments became due in a lump sum, not to the estate of the beneficiary, but to the estate of the deceased veteran as of the time of the veteran's death,—that is, as of March 31, 1921. Under the policy, the Acts of Congress and the laws of descent and distribution of Texas, this sum, admittedly $6,087.50, was inherited by the appellant as his surviving widow, there being no children of that marriage. Art. 3662, R. S.1925; U. S. v. Rose, Tex.Civ.App., 57 S.W.2d 350; Singleton v. Cheek, 284 U. S. 493, 52 S.Ct. 257, 76 L.Ed. 419, 81 A.L.R. 923; 32 Tex.Jur. 774. None of these facts, however, was known to appellant at the times here involved. Upon the death of W. H. Mills, his surviving wife and mother of said veteran undertook to collect from the U. S. Veterans Bureau the balance due under said policy as belonging to the estate of W. H. Mills. Upon being advised by the Veterans Bureau that this could not be done, that same belonged to the estate of the veteran, and would be paid only to the administrator or legal representative of that estate, Mrs. Bell Mills, without notice to or waiver

from appellant, who under the law is given a prior right to such appointment, applied for and was appointed administratrix of the estate of said veteran. The balance ($6087.50) due under said policy was paid to her in her official capacity as administratrix and so deposited in the bank by her. The attorney who represented her in the administration proceedings then advised Mrs. Mills that under the law appellant herein, as the surviving widow of the veteran, was entitled to receive said insurance. Mrs. Mills, through her son, then employed another attorney, and manifestly without advising him of all the facts, directed him to secure from appellant a release or assignment of her interest in the veteran's estate. Mrs. Mills herself, nor any of her children, ever communicated personally with the appellant or advised her of her rights or of the administration proceedings. The attorney last employed thereupon prepared in his office the instrument here attacked, took same in person out in the country to the home of the appellant, who resided on a farm with her mother, procured the signature of appellant thereto, left no copy with her, and gave her his personal check for $500. This instrument reads as follows:

"The State of Texas }
County of Milam. }

"Whereas, during his life time, Wilford M. Mills was carrying a government insurance policy which was payable to his father, Wm. H. Mills, and the said Wm. H. Mills has died, leaving his widow surviving him together with four children, together with the widow of said Wilford McKay Mills, and Mrs. Bell Mills is desirous of adjusting and dividing the balance of the insurance which has or may be collected from the Federal Government by reason of the policy which was so payable to said Wm. H. Mills, and the parties have agreed that Mrs. Bell Mills may have one-half of such insurance, and the four children of said Wm. H. Mills and Mary E. Mills Beard, widow of Wilford McKay Mills, may jointly have the other one-half between them, and which will amount to $500 to the said last named widow and said four other children.

"Now therefore, know all men by these presents: That Mrs. May E. Baird a widow, in consideration of the premises and the sum of $500 cash to me in hand paid by the said Mrs. Bell Mills, and by the children of Wm. H. Mills, the receipt whereof is

hereby acknowledged and confessed, do here now agree to such settlement and division, and do release, quitclaim, transfer and assign to them all of my right, title, claim and interest in and to said insurance and proceeds thereof, and agree that the government and such other parties may have or collect such funds shall pay over the same unto the said Mrs. Bell Mills for herself and for her four living children.

"Witness my hand this the 25th day of Feb. 1931.

"Signed: Mrs. Mary E. Baird.
"Witnesses:
"Mrs. J. C. Jordan
"E. A. Camp."

While said attorney testified that he explained fully to appellant the terms and import of said instrument, and that appellant was fully advised of all the facts and circumstances, it clearly and affirmatively appears that Mrs. Baird was not informed of all the facts nor of her legal rights in the premises. Said attorney testified that at the time he secured the execution of said instrument he knew nothing about the administration proceedings. That he deemed the insurance money to be a part of the estate of W. H. Mills, and not as the estate of the veteran, is we think manifest from the terms of the instrument itself, and from his own testimony. The language of the instrument itself, reciting that the policy was payable to Wm. H. Mills; that he had died; and that the money collected, or that may be collected, was "by reason of the policy which was so payable to said Wm. H. Mills * * *"; together with the testimony of said attorney that "I personally thought that Mrs. Mills was kind in giving her this money (that is, the $500) and I so stated to her," clearly indicate that said attorney was treating said insurance money as the community property of W. H. Mills, distributing one-half of it to his widow, Bell Mills, the other half to their children, and gratuitously including the veteran's widow as a child for the purposes of such distribution. The application of Mrs. Mills to be appointed administratrix did not disclose that the veteran left a surviving widow, though it is not controverted that she knew that fact at the time and knew the whereabouts of appellant.

It also appears that a few days prior to the time said so-called "family settlement," signed only by appellant, was executed, an interloper had gone to appellant and procured from her a power of attorney, the nature and character of which was not shown, whereby appellant agreed to pay him one-third of such sums as he might recover for her. How and from what source such recovery was to be had was not shown, nor at whose instance he came to appellant, nor whether such power of attorney related to the estate of her husband. This power of attorney was not put in evidence, nor did the party who secured it testify. Its execution, however, was made known to the attorney at the time he procured the execution of the instrument here attacked, and he immediately contacted the holder thereof, and paid him $250 by personal check to surrender same. Thereafter the so-called "family settlement" was filed in the administration proceedings. Mrs. Bell Mills filed her final account, showing the distribution of said estate, the administration was closed, and Mrs. Mills discharged. Out of the funds so received by her the attorney who procured the execution of said instrument was reimbursed for the $750 he had personally paid out, and was paid a fee for his services in the matter.

In brief, we think it clearly appears that under the terms of the veteran's policy, which was in the possession of Mrs. Mills, and the administration proceedings themselves, instituted without appellant's knowledge and to her prejudice, the appellant, in ignorance of her rights, was induced to surrender and assign by the instrument here attacked her legal claim to, if not an absolute right to recover, the entire $6,087.50 then held in trust by Mrs. Bell Mills as administratrix, for a consideration of $500. Under the record facts, therefore, the very terms of the instrument itself, the testimony of the witness who procured it, and the uncontroverted testimony of appellant, we are of the opinion that the execution of the instrument attacked was procured through fraud as a matter of law, and should be canceled.

Appellees pleaded limitation and laches against appellant's cause of action and insist that same was barred when this suit was filed. Said instrument was dated February 25, 1931. This suit was filed on April 4, 1935. It is now settled that in suits for rescission of a written instrument on the grounds of fraud, the 4-year

statute of limitation applies. Vernon's Ann.Civ.St. art. 5529. Clark v. Texas Co-op. Inv. Co., Tex.Com.App., 231 S.W. 381; Conrads v. Kasch, Tex.Civ.App., 26 S.W.2d 732, writ refused, Castle v. Brown Cracker & Candy Co., 119 Tex. 447, 31 S.W.2d 630; 28 Tex.Jur., § 44, p. 125. In the instant case it was shown that appellant did not learn the true facts nor what her rights in the premises were until April, 1932, three years before this suit was filed. Manifestly her action was not barred by limitation. It is stated in appellant's brief, and not controverted, that two other suits by appellant are pending in the District Court of Milam County, both being held in abeyance pending determination of this case; one a Bill of Review to set aside the orders of the probate court in the administration proceedings; and the other against Mrs. Bell Mills and her surety on the administratrix's bond to recover the veteran's estate. Just when those suits were filed is not shown. It may be seriously doubted whether appellees, under the facts and circumstances of the instant case, are in a position to assert laches or limitation against appellant. When Mrs. Bell Mills as administratrix of the estate of said veteran collected said insurance money as belonging to his estate, title to which under the law passed to his surviving widow, she became trustee thereof for the beneficiary, owed to her a high degree of good faith in dealing with her and with said estate. This duty she did not discharge. The facts and circumstances strongly indicate a deliberate effort to conceal from the appellant, rather than to disclose to her, full information of her rights, and the purposes of Mrs. Mills to obtain for herself and her children the funds involved. In such a case the Supreme Court has repudiated the right of one who has perpetrated a fraud upon another to avail himself of a limitation plea. See Labbe v. Corbett, 69 Tex. 503, 6 S.W. 808; 20 Tex.Jur. § 34, p. 58, and cases there cited. In any event, limitation against fraud does not begin to run until such fraud is discovered, or in the exercise of reasonable diligence should have been discovered. And in the instant case no lack of diligence on the part of appellant in failing to discover the true facts prior to April, 1932, was shown.

It is not necessary for us to pass upon the validity of the administration proceedings in this case. Those questions are doubtless involved in the Bill of Review proceedings pending in the District Court of Milam County. The only question we are here considering is the right of appellant to have canceled, on the grounds alleged, the so-called "family settlement" signed by appellant. Under the conclusion above reached the issue of want of consideration becomes but incidental. Suffice it to say, however, that according to the uncontroverted facts, the only consideration paid to appellant was taken from funds which under the law she was entitled to receive.

Appellees also urge as supporting the trial court's judgment, that under an indorsement appearing on the certificate made by the veteran, appellant received all, and more than, she was entitled to in the so-called settlement, and therefore was not defrauded. This indorsement was as follows:

"Mr. Black, I am sending my old policy, and you can fix the blank out according to it. Have the policy made $5000.00 to William Henry Mills, and $5000.00 to Loetta Bell Mills.

"Signed: Yours truly,
"W. M. Mills."

It was not shown who Mr. Black was, whether he had any authority to have any changes made in said policy, or that he ever undertook to do so. On the other hand no such change had been made at the time of the veteran's death. When the request to the Bureau of War Risk Insurance for payment of said policy was first made would have been the proper time to adjust the payments as between herself and her husband, W. H. Mills, if a division of such payments were authorized. Yet Mrs. Bell Mills made no such request nor demand of the government, but knowing these facts acquiesced in the payment to her husband as sole beneficiary the full amount due under the policy according to its terms, over a period of nine years after the veteran's death; and undoubtedly received the benefits of such payments equally with her husband. We think she should not now be heard to insist that the policy should now be treated as providing for an equal division of said funds between herself and her deceased husband. Even if the policy had been validly changed, as the indorsement above quoted requested, so as to make the father

and mother equal beneficiaries (and at most that is all that the mother could demand), then the result would have been that during the 9-year period between the death of the veteran and the death of W. H. Mills, instead of the latter receiving $57.50 per month, it would have been paid $28.75 per month to each; and upon the death of W. H. Mills, his remaining payments, or one-half of the $6,087.50, would have gone to the veteran's estate and to appellant, in any event. Yet appellant was not apprised of any of these facts at the time she executed said instrument, and for a consideration of $500 parted with her right to at least $3,043.75, which she should have received, had the change of beneficiaries been made as the veteran requested. This would be true independent of the question of waiver or estoppel of Mrs. Bell Mills to have whatever right she originally had to have such changes and adjustments made upon the death of the veteran; and independent of the failure of the veteran and of Mrs. Mills to comply with the law and the rules and regulations of the Bureau of War Risk Insurance so as to make a valid change of beneficiary. An annotation of the latter question is to be found in 55 A.L.R. 587 et seq.

While other questions are raised, and contentions made, relating to the validity and finality of the administration proceedings, we express no opinion upon them here. They are manifestly involved in the suits now pending in the District Court. The only question here presented is the right of appellant to have canceled the instrument attacked, on the grounds alleged. Having reached the conclusion that under the undisputed facts and circumstances, considered in connection with the record evidence, appellant was entitled to a judgment canceling and setting aside same as a matter of law, and that regardless of the trial to a jury the judgment of the trial court is reversed and judgment here rendered in favor of appellant as prayed for.

Reversed and rendered.

## On Motion for Rehearing.

Appellees, in their motion for rehearing, complain, among other things, of our statement in the original opinion that the deceased veteran held a $10,000 policy in which his father, W. H. Mills, was named beneficiary, and ask that same be corrected. The record discloses that on February 1, 1918, said soldier executed and sent to the Bureau of War Risk Insurance two applications, each applying for a $10,000 policy, in one of which he named his father beneficiary, and in the other he named his mother beneficiary. The certificate issued by the Bureau of War Risk Insurance did not in itself name anyone beneficiary. However, $10,000 was the maximum amount of insurance authorized by law to be issued to the soldier. Only one certificate was issued and that was for $10,000. It does not appear which application was attached to said certificate as issued. Manifestly the one on file in the office of the Bureau of War Risk Insurance as authority for said certificate was that in which his father was named beneficiary. After the veteran died in 1921, the father applied for payment to him of the insurance as beneficiary in the policy. The Bureau of War Risk Insurance so recognized him and for nine years made payments to him as such. This was obviously done with the full knowledge and consent of Bell Mills, the veteran's mother. In addition to this, when, after the death of the veteran's father, his mother undertook to collect the balance due under said policy, she treated it throughout as being payable to her husband as beneficiary, undertook to collect it as such, and in the so-called "settlement agreement" here involved, it was recited that W. H. Mills was the beneficiary in said policy, and the so-called settlement procured on that assumption. While this correction is made in the interest of clarity, we think it conclusively appears that the certificate or policy involved should be treated as naming W. H. Mills the beneficiary therein.

Appellees' motion for rehearing is therefore overruled.

Overruled.